# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ   07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
           **JUDGE**

## LETTER OPINION

March 12, 2010

Glen Mays
# 743493D
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625
    (*Pro Se Plaintiff*)

James M. McCreedy
Wiley, Malehorn & Sirota
250 Madison Avenue
Morristown, NJ 07960
    (*Attorneys for Defendants*)

      RE:   *Mays v. Untig et al.*
              <u>Civil Action No. 08-4153</u>

Dear Litigants:

    This matter comes before the Court on the Motion to Dismiss by Defendants Robert E. Untig ("Untig"), John G. Armeno ("Armeno"), Virgil R. Rome, Jr. ("Rome"), Sussex County Free Holders (the "Freeholders"), and David DiMarco ("DiMarco") (collectively, "Defendants") and on the motions to amend and for *pro bono* counsel by Plaintiff Glen Mays ("Mays").   There was no oral argument.   Fed. R. Civ. P. 78.   For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**, Plaintiff's motions to amend are denied as futile, and Plaintiff's motion for *pro bono* counsel is also denied.

1

I.     **BACKGROUND**

Plaintiff Glen Mays ("Mays") was a pre-trial detainee confined at the Sussex County Jail, also known as the Keogh Dwyer Correctional Facility, in Newton, New Jersey beginning in December 2006.  (Complaint ("Compl.") at 4).  Defendants are county sheriffs and undersheriffs affiliated with the jail.  (*Id.* at 4-5).  On January 21, 2007, Plaintiff complains that he was attacked by another inmate, Jose Lewis ("Lewis") and suffered injuries to the nose and hand.  (*Id.* at 6-7).  Specifically, Plaintiff alleges that Lewis hit him in the nose with a wooden scrub brush and bit him on the hand, breaking the skin, revealing the bone, and possibly infecting him with Hepatitis-C.  (*Id.*; Plaintiff's Opposition Brief ("Pl. Opp. Br.") at 13).  It is unclear who instigated the fight.  (*Id*. at 6-7, 12; Defendants' Brief ("Dft. Br.") at 4).  Plaintiff was subsequently taken to an outside hospital, where he received stitches and was tested for Hepatitis-C, although he does not know if he contracted the disease.  (Compl. at 6-7, 14-15; Pl. Opp. Br. at 13, 20).  After Plaintiff returned to the jail following his hospital visit, he was placed in lockdown because fighting with another inmate violated jail policy.  (Pl. Opp. Br. at 9, 12).  Lewis faced similar consequences.  (*Id*. at 21).

In August 2008, Plaintiff filed the instant complaint with the district court pursuant to 42 U.S.C. § 1983.  The gravamen of Plaintiff's complaint is that inmate Lewis was psychotic and violent, that jailhouse officials knew this, and that by housing Lewis in the jail's general population, Defendants failed to protect Plaintiff's civil rights in violation of the due process clause of the Fourteenth Amendment.[1]  (Compl. at 6-7).  In support of his contention that jailhouse officials knew Lewis was psychotic, Plaintiff points out numerous instances of Lewis's erratic conduct and the fact that he took "phsycotic [sic] patient meds."  (Compl. at 6; Pl. Opp. Br. at 3, 14).  Plaintiff also alleges that he filed numerous internal grievances pertaining to this incident, although he has not provided the Court with any copies of them and does not describe their contents with any degree of specificity.  (Pl. Opp. Br. at 10).  Defendants deny the existence of any filed grievances related to this incident and have submitted a certification to this effect.  (Dft. Br. at 7; Certification of Undersheriff David DiMarco ("DiMarco Certif.") ¶ 6).

The Court performed an initial screening of the complaint pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), and allowed Plaintiff's § 1983 failure to protect claim to proceed.  Presently, Defendants move to dismiss the claims against them pursuant to Fed. R. 12(b)(6) on the grounds that (1) Plaintiff has failed to exhaust his administrative remedies, a requirement imposed on him by the PLRA, and (2) Plaintiff's claim fails to state a plausible claim for relief.  (Dft. Br. at 3, 5).  Plaintiff opposes the motion to dismiss, seeks appointment of *pro bono* counsel, and seeks leave to amend to include monetary damages and to sue Defendants in their individual capacities.

II.    **ANALYSIS**
    A.    **Standard of Review**

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b), all allegations in the

---

[1] Although Plaintiff does not specifically reference the Fourteenth Amendment, this appears to be his allegation.

complaint must be taken as true and viewed in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).   When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).   If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Although a complaint does not need to contain detailed factual allegations, "the 'grounds' of [the plaintiff's] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).   Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level. *See id.* at 1964-65.   Furthermore, although a court must view the allegations as true in a motion to dismiss, it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations."  *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

### B. Failure to Exhaust Administrative Remedies

Defendants argue that the complaint must be dismissed because Plaintiff has failed to exhaust his administrative remedies as required by the PLRA.   (Dft. Br. at 5). Defendants are correct that the PLRA applies to Plaintiff and that the statute requires exhaustion of the Sussex County Jail's internal administrative grievance procedures before he can pursue litigation.   42 U.S.C. § 1997e(a).   This is true even if Plaintiff seeks relief beyond that which the jail's internal policies permit or if Plaintiff believes that compliance with the internal procedures will be futile.   *Id*; *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001); *Williams v. Hayman*, 657 F.Supp.2d 488, 496 (D.N.J. 2008).

Determining whether or not Plaintiff has in fact failed to exhaust his administrative remedies requires an examination of the complaint as well as the briefs submitted by both parties.   Defendants assert, and Plaintiff does not refute, that the jail's policies permit an inmate to file an informal grievance at any time, a standard grievance within 15 days after the occurrence of a potentially grievable event, and an emergency grievance if an immediate threat is involved.   (Dft. Br. at 6-7).   A carbon copy of all completed grievances forms is supposed to be given back to the inmate.   (*See* Ex. B. annexed to DiMarco Certif.)   If an inmate is dissatisfied with the resolution of a grievance, he is entitled to appeal to a grievance committee.   (*Id*.)   An inmate cannot file a civil action until he has followed these procedures and submitted a grievance on the same subject matter to be covered by the complaint.   (*Id*.)   Defendants argue that Plaintiff failed to avail himself of any of these remedies and have provided a certification from Defendant

3

Undersheriff DiMarco stating that based upon his review of Plaintiff's file at the jail, Plaintiff did not file any grievances regarding any of the allegations in his complaint. (Dft. Br. at 7; DiMarco Certif. ¶ 6).

Plaintiff alleges that, to the contrary, he filed multiple grievances pertaining to the issues in his complaint.   (Pl. Opp. Br. at 10).   However, he did not attach any copies of these grievances to his complaint and states only that officials at the jail in general often throw away completed grievance forms if the claims made do not appear to be easily resolvable.   (*Id*.).   He does not say that this happened here.   He also does not explain what happened to his carbon copies of the grievance forms.   Moreover, while Plaintiff says that he filed the grievances in 2007, he does not provide any specific dates or even state whether they were filed within 15 days of the incident as required by the jail's regulations.   (*Id.* at 9).   He also provides scant details about the contents of the grievances, leaving the Court unable to determine whether or not they even pertained to his failure to protect claim.   Indeed, a thorough reading of Plaintiff's filings reveals that the primary focus of the grievances he allegedly filed was his outrage at being punished for his involvement in the fight with Lewis.   (*Id*.)   Therefore, Plaintiff has not provided the Court with any basis to conclude that the subject matter of the grievances was the same as the subject matter of the complaint.   Plaintiff also does not allege that he ever attempted to file an appeal with respect to any of his grievances when he was dissatisfied with the results, which would also be a necessary step in exhausting administrative remedies.

Because Plaintiff is a *pro se* prisoner, the Court must construe his pleadings liberally.   *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).   Here, however, Plaintiff has not given the Court any basis for concluding that he exhausted his administrative remedies. Because Plaintiff has failed to provide copies of the grievances he claims to have filed, provides no explanation why he did not retain carbon copies of the forms, does not allege that the forms were filed within the requisite time period, and fails to state conclusively that these grievances pertained to his failure to protect claim, the Court cannot conclude that Plaintiff has exhausted his administrative remedies.   As exhaustion of administrative remedies is mandatory, the Court has no choice but to dismiss the complaint.[2]

### C.   Motion to Amend

Plaintiff has filed two motions to amend his complaint.   Plaintiff's first request for leave to amend primarily seeks to add a request for monetary damages.   (Plaintiff's First Motion to Amend the Complaint ("First Mt. to Amend") at 1).   The original complaint makes no mention of damages, leading the Court to conclude that he sought injunctive relief only.   However, Plaintiff says he intended to seek monetary damages all along but did not realize he was supposed to make this request in his complaint.   (*Id*.)   The first request to amend also states that he would like to "add an eyewitness" and after discovery is complete, possibly add more defendants.   (*Id*.)

In Plaintiff's second request for leave to amend, he seeks to add Defendants in their

---

[2] The Court notes that in addition to the failure to exhaust argument, Defendants have also raised a failure to state a plausible claim for relief argument.   However, given that the Court has already determined that the complaint must be dismissed for failure to exhaust, there is no need to address this additional argument.

individual capacities. (Plaintiff's Second Motion to Amend ("Second Mt. to Amend") at 1). The original complaint was filed against Defendants in their official capacities only. Plaintiff does not explain why he seeks this amendment or why he did not sue Defendants individually at the outset.

Defendants object to the proposed amendments on the grounds that they would not remedy the complaint's infirmities. (Dft. Br. at 8-9). The Court agrees. Because these amendments do not correct or even address the issue of whether or not Plaintiff exhausted his administrative remedies prior to filing his complaint, granting the motions to amend would be futile. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (stating that a district court need not grant leave to amend a complaint where doing so would be futile). Therefore, the Court denies Plaintiff's motions.

### D. Motion for Appointment of Pro Bono Counsel

Plaintiff has moved for the appointment of *pro bono* counsel pursuant to 28 U.S.C. § 1915(e)(1).[3] (Plaintiff's Motion for Pro Bono Counsel). Courts considering whether to appoint *pro bono* counsel must first determine whether or not the claim has merit in fact and in law. If the Court finds that it does not, *pro bono* counsel is not warranted. *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997); *Tabron v. Grace*, 6 F.3d 147, 155, 158 (3d Cir. 1993).

Here, because the Court has already determined that Plaintiff's complaint lacks sufficient merit to withstand a motion to dismiss, appointment of *pro bono* counsel is not warranted. Plaintiff's request is denied.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED and Plaintiff's complaint is DISMISSED WITH PREJUDICE. Because amendment would be futile, Plaintiff's motions to amend are denied. Finally, because Plaintiff's case lacks merit, Plaintiff's request for appointment of *pro bono* counsel is denied.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

---

[3] Plaintiff was granted *in forma pauperis* status, necessary to apply for *pro bono* counsel, in May 2009.